UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

JOHNNIE M. HARRIS,

                                    Plaintiff,

v.                                          **DECISION AND ORDER**
                                                            06-CV-821S
MICHAEL ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                                  <u>Defendant.</u>

       1.        Plaintiff Johnnie M. Harris challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since January 1, 2000, due to degenerative disc disease of the lumbar spine, hypertension, a depressive disorder, and alcohol dependence in full sustained remission. Plaintiff contends that her impairments render her unable to work. She therefore asserts that she is entitled to disability benefits under the Act.

       2.        Plaintiff filed an application for disability insurance benefits on October 26, 2004. Her application was denied initially on January 29, 2005, and Plaintiff requested a hearing before an ALJ, which was held on May 18, 2006. The ALJ considered Plaintiff's case *de novo*, and on June 27, 2006, issued a decision denying Plaintiff's application for benefits.

       Plaintiff exhausted her administrative remedies[1] and filed the instant action on December 14, 2006, challenging the ALJ's decision. The parties subsequently filed Motions for Judgment on the Pleadings on June 14, 2007. After full briefing, this Court

---

[1] The ALJ's decision became the Commissioner's final decision in this matter after the Appeals Council denied Plaintiff's request for review on November 6, 2006.

deemed oral argument unnecessary and took the motions under advisement on August 20, 2007. For the following reasons, Defendant's motion is granted and Plaintiff's motion is denied.

3. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

4. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

5. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

6. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

7. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

8. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity at any time relevant to the ALJ's decision (R. at 12); (2) Plaintiff's impairments are considered "severe" impairments within the meaning of the Act (R. at 12); (3) Plaintiff's impairments do not meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (R. at 12); (4) Plaintiff retained the residual functional capacity to perform work activity with certain restrictions[2] (R. at 13); and (5) Plaintiff had past relevant work experience as a personal care aide and factory worker. (R. at 12).

9. Plaintiff asserts a number of challenges to the ALJ's decision. First, Plaintiff

---

[2]In particular, the ALJ found that "claimant has the residual exertional capacity to sit during an 8-hour workday, provided that she has the opportunity to change position during customary meal and break periods, and she can stand and walk for at least 6 hours in an 8-hour day, with similar meal and break periods. The claimant can lift and carry 10 pounds frequently and 20 pounds occasionally, and she can perform pushing, pulling, reaching and bimanual functions with that same strength level. The claimant has mild limitation for repetitive bending, stooping, kneeling and crouching. The claimant has no significant limitations with respect to her mental capacity to perform routine work activities, with the possible exception of a desire to avoid frequent interaction with the public." (R. at 13).

contends that the ALJ failed to give adequate weight to the opinion of her treating physician, Dr. Winston Douglas. (Plaintiff's Mem., pp. 4-7).  According to the "treating physician rule,"[3] the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (3) consistency, (4) specialization of treating physician, and (5) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Here, the Court finds that the ALJ gave an adequate justification for not attributing controlling or extra weight to the opinion of Plaintiff's treating physician.  The record indicates that Dr. Douglas diagnosed Plaintiff with degenerative joint disease and

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

prescribed Ibuprofen. (R. at 13). Dr. Douglas stated that Plaintiff had the following functional capabilities and limitations:

> [L]ift and carry 10 pounds occasionally; stand and walk 2 hours in an 8 hour workday; sit without limitation; pushing/pulling limited in the lower extremities but not affected in the upper extremities; perform occasional balancing, kneeling, crouching, crawling, and stooping; capable of unlimited reaching, handling, fingering, and feeling; no communicative limitations; and environmental conditions such as temperature extremes, vibration, and humidity may aggravate her symptoms.

(R. at 13).

The ALJ found, however, that Dr. Douglas' reports revealed "no significant clinical findings or diagnostic test results indicative of a specific and significant musculoskeletal disorder." (R. at 13). The ALJ further noted that Dr. Steven Dina diagnosed Plaintiff with depression and lower back pain, but concluded that Plaintiff had no functional limitations in her lower back, no limitations in her ability to sit, no loss of function, and that Plaintiff was able to ambulate without the use of any assistive devices. (R. at 14). Because Dr. Douglas' opinion is not supported by the record, and is contradicted by other medical evidence, this Court finds that the ALJ did not err in declining to give Dr. Douglas' opinion controlling or extra weight.

10. Plaintiff further contends that the ALJ erred in discrediting Dr. Douglas' opinion without contacting him for an explanation of perceived inconsistencies between his opinion and other evidence in the record. (Plaintiff's Mem., pp. 7-8). However, under 20 C.F.R. § 404.1527(c)(3), the ALJ must seek clarification from the treating physician or pursue an alternative option of clarification only "[i]f the evidence is inconsistent but [the ALJ does] not have sufficient evidence to decide whether [Plaintiff is] disabled, or if after weighing the evidence [the ALJ] cannot reach a conclusion about whether [Plaintiff] is

disabled." Here, there is no indication that the ALJ had insufficient evidence or could not reach a conclusion based on the record before him. Accordingly, the ALJ did not err in declining to contact Dr. Douglas.

11. Plaintiff lastly contends that the ALJ erred in relying exclusively on the Medical Vocational Rules (also referred to as "the grids") to determine whether there were jobs in the national economy that Plaintiff could perform. (Plaintiff's Mem., pp. 8-9). Plaintiff argues that under Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986), the ALJ was required to hear testimony from a vocational expert concerning Plaintiff's non-exertional limitations and their impact on her ability to perform work at any exertional level. (Plaintiff's Mem., p. 9).

In Bapp, the Second Circuit explained:

> [W]e believe that the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations-so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.

802 F.2d at 603.

Here, there is no indication from the record or the ALJ's Decision that Plaintiff's non-exertional limitations would significantly limit the range of work she could perform. It was therefore permissible for the ALJ to rely exclusively on the Medical Vocational Rules, and it was not necessary to hear testimony from a vocational expert.

12. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective

medical evidence and medical opinions contained therein.  This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act.  Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings, and deny Plaintiff's Motion for Judgment on the Pleadings.

      13.    For the foregoing reasons,

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:  March 18, 2008
          Buffalo, New York

                                           /s/William M. Skretny
                                           WILLIAM M. SKRETNY
                                           United States District Judge